**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| JALANIA SANDRIDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 4:19-cv-00579-JHE |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION[1]**

Plaintiff Jalania Sandridge ("Sandridge") seeks review, pursuant to 42 U.S.C. § 405(g), §

205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying her application for Supplemental Security Income

("SSI").  (Doc. 1).  Sandridge timely pursued and exhausted her administrative remedies. This case

is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully

considered the record, and, for the reasons stated below, the Commissioner's decision is

**AFFIRMED**.

### I. Factual and Procedural History

On April 24, 2015, Sandridge filed an application for SSI alleging disability beginning

December 31, 2014.  (Tr. 19, 220-26).  After the agency denied her application, (tr. 107-11),

Sandridge requested and appeared at two hearings before an Administrative Law Judge ("ALJ")

in Gadsden, Alabama.  (Tr. 214-15).  The first hearing was held on October 10, 2017, and the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 9).

second was held on May 3, 2018.  (Tr. 41-82).   At the first hearing, Sandridge amended her disability onset date to April 24, 2015.  (Tr. 55, 71).  The ALJ issued an unfavorable decision on September 24, 2018, finding Sandridge not disabled.  (Tr. 19-33).  The Appeals Council granted Sandridge's request for review and affirmed the ALJ's decision on April 8, 2019.  (Tr. 1-7).  On that date, the ALJ's decision became the final decision of the Commissioner.  On April 15, 2019, Sandridge initiated this action.  (*See* doc. 1).

Sandridge was fifty-seven years old as of the date of the ALJ's decision.  (Tr. 33, 220). She completed the tenth grade and has past relevant work experience as a cashier and inventory clerk.  (Tr. 76, 295).  In her Disability Report, Sandridge alleges she is unable to work because of migraines, anxiety, and arthritis.  (Tr. 294).  At her first hearing, she stated she could not work because of bipolar disorder, hypertension, carpal tunnel syndrome and problems with her right knee.  (Tr. 78).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Sandridge had not engage in substantial gainful activity during the period under review. (Tr. 21).  At Step Two, the ALJ found Sandridge has the following severe impairments: lumbar spondylosis, cervical spondylosis, polyarthritis, residuals from past carpal tunnel syndrome surgery ("CTS"), torn meniscus of knee and residuals from surgical repair, clostridium difficile, major depression, anxiety disorder; and post-traumatic stress disorder ("PTSD").  (Tr. 22).  At Step Three, the ALJ found Sandridge did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20

4

C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-25).

Before proceeding to Step Four, the ALJ determined Sandridge's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1).   The ALJ determined Sandridge had the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a), except for the following additional restrictions:

> [The claimant can] sit for 6 hours in an 8-hour workday and stand/walk for a total of 2 hours in an 8-hour workday; occasionally climb, balance, stoop, but never kneel, crouch or crawl; no climbing of ladders; no more than frequent fine and gross manipulation [to account for residuals from carpal tunnel surgery]; no work around unprotected heights; no operation of foot or leg controls; limited to simple, routine tasks, limited to jobs that deal primarily with objects and not people; and does not require contact with the general public.

 (Tr. 25-32).

At Step Four, the ALJ determined, Sandridge was unable to perform any past relevant work.  (Tr. 32-33).  At Step Five, the ALJ determined, based on Sandridge's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Sandridge could perform, such as an eye dropper assembler, table worker, and cuff folder. (Tr. 32.33).  Therefore, the ALJ determined Sandridge has not been under a disability during the relevant time period and denied her claim.  (Tr. 33).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, Sandridge makes four arguments in favor of remand: (1) the Appeals Council and ALJ failed to give proper weight to the opinion of Dr. Jane Teschner, Sandridge's treating physician, and failed to state good cause for discounting her opinion, (doc. 10 at 25-35); (2) the ALJ failed to give proper weight to the consulting psychologist, Dr. June Nichols, (*id*. at 35-39); (3) the ALJ substituted his own opinion for that of Dr. David Wilson, an independent psychological examiner, (*id*. at 40); and (4) the ALJ's reliance on the vocational expert's testimony was in error because it was not based on a correct or full statement of Standridge's limitations and impairments, (*id*. at 41-42).  The court addresses each argument in turn.  For the following reasons, substantial evidence supports the ALJ's determination, and the ALJ applied the proper standards to reach this conclusion

### A. The ALJ Did Not Err in Assigning Weight to Dr. Teschner's Opinion

Sandridge first argues the Appeals Council and the ALJ failed to accord proper weight to Dr. Teschner's opinion and failed to state good cause for discounting it.  (*Id*. at 25-35).  Sandridge contends Dr. Teschner's opinion "is well supported by clinical and laboratory findings, and not inconsistent with other substantial evidence" and should have been given substantial weight.[4]  (*Id*. at 29).

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).  The Eleventh Circuit Court of Appeals has stated that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding;

---

[4] In addition, Sandridge cites to cases regarding the ALJ's duty to specify the weight given to a treating physician's opinion.  (Doc. 10 at 30).  To the extent that Sandridge is attempting to make the argument that the ALJ did not clearly articulate the reasons for giving less weight to the opinion of Dr. Teschner, this argument is belied by the record.  The ALJ clearly articulated the weight he gave to the opinion of Dr. Teschner, as well as the reason for discounting her opinion. (Tr. 30).

or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  In rejecting a medical opinion, the ALJ must clearly articulate his or her reasons for doing so.  *Id*. at 1240–41.

Sandridge contends the ALJ erred in giving little weight to the medical source statement completed by Dr. Teschner on July 19, 2017.  (Tr. 1179).  The statement, entitled "Physical Capacities Form" is a one-page document consisting of a series of questions with answers to be circled or blanks to be filled by the person completing it.  (Tr. 1179).  In that statement, Dr. Teschner opined Standridge could stand for one hour and sit for one hour, and she would need to lie down or sit for 4 hours.  (Tr. 1179).  She also stated Plaintiff would be off task 90% of an 8-hour workday and would miss greater than 10 days of work per month.  (Tr. 1179).  Dr. Teschner attributed these limitations to Standridge's right knee pain and "LBP," which the undersigned assumes is low back pain.  (Tr. 1179).  She also noted drowsiness and dizziness "when on pain meds."  (Tr. 1179).

In addressing this medical opinion, the ALJ stated he gave it "little weight" because the limitations were not consistent with Dr. Teschner's "treatment notes that document normal musculoskeletal and neurological examinations."  (Tr. 30).  In support of this statement, the ALJ noted Dr. Teschner treated Sandridge only once in 2017, for bronchitis, and before that date had not seen her since 2014.  (Tr. 30).  And although Dr. Teschner treated Sandridge in 2018 for a variety of issues, her musculoskeletal and neurological examinations were normal at those visits. (Tr. 30).

The ALJ has shown the good cause required for assigning little weight to the medical source statement completed by Dr. Teschner.  The undersigned first notes the statement form is a series of questions where Dr. Teschner circled responses or filled in provided blanks with

7

absolutely no explanation for the answers given. (Tr. 1179). Without explanation or extrapolation from Dr. Teschner, the form has little probative value. Indeed, several courts have criticized "form reports" such as the one Dr. Teschner provided where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions"). The court acknowledges, however, that the use of such forms "is not a basis, *in and of itself*, [to] discount them as conclusory." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (emphasis added). 935 F.3d at 1262.

As the ALJ explained, Dr. Teschner's limited treatment notes do not provide support for the marked limitations detailed in the statement. In a record of well over 1200 pages, there are only 37 pages of treatment notes from Dr. Teschner. The treatment notes routinely documented normal musculoskeletal and neurological examination findings. (Tr. 607-09, 1026, 1179, 1232). There is also a large gap in treatment history by Dr. Teschner. The first notes are dated April 17, 2014, (tr. 601-12), and then there is no record of any treatment by Dr. Teschner until January 6, 2017, when Sandridge was treated for bronchitis. (tr. 1025-27). There are no other medical records from Dr. Teschner in 2017. Simply put, nothing in the treatment notes from Dr. Teschner suggests

the extreme limitations opined in the medical source statement.

For the reasons discussed above, the court concludes that the ALJ did not err in according less weight to the medical source statement completed by Dr. Teschner. The ALJ clearly articulated his reasons for assigning little weight to the opinion and the court agrees with the ALJ that the opinion was not supported by the treatment records. Additionally, for these same reasons, the Appeals Council did not err in its review of the ALJ's decision as it explicitly found the ALJ provided appropriate rationale for the weight given to Dr. Teschner's opinion. (Tr. 4-5).

### B. The ALJ Did Not Err in Assigning Weight to Dr. Nichols' Opinion

Sandridge next contends the "ALJ failed to accord proper weight to Dr. June Nichols,[the] consulting psychologist selected by [the] Commissioner." (Doc. 10 at 35). As discussed above, "the ALJ must state with some particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc.* Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [any] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 404.927(a). In determining the weight given to a claimant's medical opinions, the ALJ may look at several factors: the examining and treatment relationship between the doctor and patient, the supportability of the doctor's opinion, the consistency of the doctor's opinion with the record as a whole, the doctor's specialty, and other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). A doctor's opinion may be discounted based on the length and frequency of the treatment relationship and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2). A physician who only saw the claimant on a single occasion is not considered a treating physician, and his opinion is not entitled to great weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

9

The court finds Sandridge has abandoned her claim with regard to the opinion of Dr. Nichols.  "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."  *Access Now, Inc. v. Sw. Airlines Co*., 385 F.3d 1324, 1330 (11th Cir. 2004).  "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  *Singh v. U.S. Atty. Gen*., 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted).  A recent panel of the Eleventh Circuit, in an unpublished opinion, applied the *Singh* decision to a brief in another case, finding that the plaintiff abandoned an issue on appeal "because her initial brief simply mentions the issue without providing any supporting argument*."  Sorter v. Soc. Sec. Admin., Comm'*r, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing *Singh*, 561 F.3d at 1278-79.[5]; *see also Bailey v. Soc. Sec. Admin., Comm'r*, 2019 WL 5787955, at *1 n.1 (11th Cir. Nov. 6, 2019) (declining to address one of the plaintiff's arguments because she raised it "'in a perfunctory manner without supporting arguments'") (quoting *Sapuppo v. Allstate Floridian Ins. Co*., 739 F.3d 678, 680-82 (11th Cir. 2014); *Morgan v. Soc. Sec. Admin., Comm'r*, 2019 WL 1466259 (N.D. Ala. Apr. 3, 2019) (finding plaintiff abandoned her argument that the ALJ improperly considered her fibromyalgia where plaintiff identified no specific error with the ALJ's consideration of her fibromyalgia, and she failed to explain why she believed the ALJ's evaluation of her fibromyalgia runs afoul of SSR 12-2p).

In the section of her brief dedicated to her contention that the ALJ erred in his assignment of little weight to the opinion of Dr. Nichols, Sandridge provides no argument or citation to the record.  (Doc. 10 at 35-39).  She does not even cite the relevant portions of the medical opinion at

---

[5] The court notes that the finding did not form the sole basis for the panel's decision; the panel also found the plaintiff's argument failed on the merits.  *Sorter*, 773 F. App'x at 1073.

issue.  Instead, the four and a half pages dedicated to this section of her brief consists of general principles of law governing an ALJ's treatment of medical experts and block quotes from other cases dealing with the issue, but she stops short of actually explaining how the ALJ erred in considering Dr. Nichols' opinion.  (*Id.*).  The brief does not provide any substantive analysis as to this issue. This sort of perfunctory argument gives neither the Commissioner nor the court any guidance about Sandridge's argument aside from the fact that she asserts the existence of an error. *See Singh*, 561 F.3d at 1278 ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  Nor does Sandridge's reply brief remedy the deficiencies of her initial brief.  (*See* Doc. 12 at 11).

Even if the court does not consider the issue abandoned and attempts to guess at Sandridge's argument, substantial evidence exists for giving little weight to the opinion of Dr. Nichols.  Because Dr. Nichols was a consultative examiner and only saw Sandridge on one occasion, her opinion is not entitled to any deference or special consideration. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ gave Dr. Nichols' opinion little weight because it was inconsistent with her examination findings and other evidence of record but gave great weight to the actual findings from the examination.  (Tr. 29).

Dr. Nichols diagnosed Sandridge with major depressive disorder, panic disorder with agoraphobia, and PTSD.  (Tr. 737-38).  She opined Sandridge's ability to relate interpersonally and withstand the pressures of everyday work is compromised because of the nature of her symptoms, which the ALJ noted was consistent with the evidence.  (Tr. 29, 737-38).  Dr. Nichols

also opined Sandridge did not have deficits that would interfere with her ability to remember, understand and carry out work related instructions.[6]  (Tr. 737-38).  Although Dr. Nichols also opined the anxiety and panic attacks would markedly interfere with concentration, persistence and pace, the ALJ disagreed and referenced Dr. Nichols objective examination findings that showed Standridge's concentration and attention was normal as she completed her tasks adequately.  (Tr. 29, 736).  The ALJ also noted Dr. Carr and Dr. Teschner's records did not note "such and extreme limitation."  (Tr. 29).

For the reasons discussed above, the court first finds Sandridge abandoned her argument as it relates to Dr. Nichols' opinion.  In the alternative, the court finds the ALJ did not err in according less weight to the opinion of Dr. Nichols.  The ALJ clearly articulated his reasons for doing so and the court agrees with the ALJ that the opinion was not supported by the examination findings or the other medical evidence.

### C.  The ALJ Did Not Err in Assigning Weight to Dr. Wilson's Opinion

Sandridge's third assertion of error is the "ALJ erred in substituting his own opinion for that of Dr. David Wilson, an independent psychological examiner."  (Doc. 10 at 40).  Much like her brief as it relates to Dr. Nichols, Sandridge provides no discussion of Dr. Wilson's opinion, argument or citation to the record.  Instead, her brief on this issue consists of two sentences, followed by approximately a page of string citations and the following sentence: "In light of the evidence, Claimant requests reversal based on the above evidence."  (*Id*.).  However, there is no "above evidence."  This argument is even more perfunctory than the one addressing Dr. Nichols' opinion and, again, gives neither the Commissioner nor the court any guidance about Sandridge's argument aside from the fact that she asserts the existence of an error.  Her reply brief is of no help

---

[6] Based on the evidence as a whole, however, the ALJ limited Sandridge to simple work to reduce job pressures and stress.  (Tr. 29).

– it merely recites the same two first sentences with the string citations, but omits the last sentence. (Doc. 12 at 12).  For these reasons, the court finds Sandridge has abandoned her claim with regard to the opinion of Dr. Wilson.  *See Singh*, 561 F.3d at 1278; *Sapuppo*, 739 F.3d at 681.

Even if the court considered the merits of this argument, it fails.  Because Dr. Wilson was a one-time examiner, his opinion is not entitled to any deference or special consideration. *See Crawford*, 363 F.3d at 1160.  The ALJ assigned only some weight to Dr. Wilson's opinion and found Sandridge was not as limited as opined.  (Tr. 30).  Although Dr. Wilson stated Sandridge had a great deal of difficulty being around people, the ALJ noted Sandridge's visits with her uncle and a friend, goes to the park, has worked with contractors on renovating a house, and she has since gotten married.  (Tr. 30, 1181, 1186).  Additionally, other treatment records document her thought process was consistently noted to be linear and goal directed, and her judgment and insight were good, and her cognition grossly intact.  (Tr. 30, 1186, 1232-33).

Based on the above, the court finds the ALJ did not substitute his own opinion for that of Dr. Wilson.  Instead, the ALJ weighed the medical evidence and the credibility of Dr. Wilson's opinion in light of all the evidence in the record.  In summary, the ALJ properly performed his duty of evaluating all the evidence in assessing Sandridge's RFC.

### D. The ALJ Did Not Err in Considering Vocational Expert's Testimony

Sandridge's final argument is that the VE's testimony is not supported by substantial evidence because it was based on an inaccurate and incomplete hypothetical.  (Doc. 10 at 41-42). Specifically, Sandridge contends that "the hypothetical question relied upon did not accurately state [Sandridge]'s mental problems or her residual functional capacity," but instead assumed she could perform light work.  (*Id.* at 41).  The court disagrees.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Wilson v.*

*Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007).  Further, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

Here, the ALJ found the evidence demonstrated Sandridge could not perform her past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform such as eye dropper assembler, a table worker, and a cuff folder.  (Tr. 32-33).  The ALJ's hypothetical questions to the VE fully accounted for Sandridge's impairments and limitations, as demonstrated by the medical evidence of record; that is all that is required of the ALJ.  *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *McSwain*, 814 F.2d at 619-20 (11th Cir. 1987); *see also Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 883 (11th Cir. 2019) ("because Borges's RFC, which is supported by substantial evidence . . . matched the ALJ's first hypothetical question at the hearing he did not need to rely on these more restrictive hypotheticals").  Sandridge failed to establish she had additional limitations beyond those assessed by the RFC determination.  She points to "occasional use of right hand" and an "inability to interact with others," (doc. 10 at 42), but the medical records do not indicate her physical condition was limited to only occasional use of her right hand or that she is incapable of interacting with others.

Because Sandridge's RFC, which is supported by substantial evidence as explained herein, matched the ALJ's first hypothetical question at the hearing, the ALJ did not need to rely on the more restrictive hypotheticals later posed to the VE.  Sandridge's argument is without merit.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, decision of the Commissioner of Social Security is **AFFIRMED** and

this action **DISMISSED WITH PREJUDICE**.

DONE this 30th day of November, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE